Niria M. Arvizu, Esq., [SBN 236994]
arvizu@ipcounsel.us
301 E. Colorado, Blvd., Suite 705
Pasadena, CA 91101
Telephone No.: 626.831.8077

Attorneys for Plaintiff,
Wonderfold Corporation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WONDERFOLD CORPORATION, a California Corporation.<br><br>Plaintiff,<br><br>vs.<br><br>EMPOWERRIDE LLC, a Nebraska Limited Liability Company, PETER ANARADIAN, an individual, and DOES 1-5 inclusive,<br><br>Defendants. | Case No.: 2:26-cv-11005<br><br>**COMPLAINT FOR PATENT INFRINGEMENT, TRADEMARK INFRINGEMENT, AND UNFAIR COMPETITION**<br><br>JURY TRIAL DEMANDED |

Plaintiff, Wonderfold Corporation, (hereinafter "Wonderfold") for its Complaint against Defendants, Peter Anaradian, an individual ("Anaradian"), and Empowerride LLC, a Nebraska Limited Liability Company, ("Empowerride", collectively, "Defendants"), states and alleges the following:

## NATURE OF THE ACTION

1. This is a civil action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the common law of trademark infringement, misappropriation, and unfair competition.

2. Defendants have infringed and continue to infringe, and have induced and continue to induce infringement of the claims of U.S. Patent No. D955,301 ("the '301 patent"), and the protected design elements of the stroller of Wonderfold, at least by importing, selling and offering to sell the Empowerride stroller.

3. Wonderfold is the owner of all rights to all causes of action and remedies arising under the '301 patent, and the owner of the trademark design of the stroller of Wonderfold in the United States. Plaintiff seeks injunctive relief and monetary remedies.

## JURISDICTION AND VENUE

4. This is a civil action for patent infringement arising under patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and for trademark infringement arising under the Lanham Act, 15 U.S.C. §1125(a) and unfair competition.

5. This Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331, 1332 and 1338(a) and 15 U.S.C. § 1125(a) because this action arises under the trademark and patent laws of the United States, there is a diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.

6. Defendants are subject to this Court's personal jurisdiction for one or more of the following reasons:

a. Defendants have infringed the '301 patent and the trademark in this District by, among other things, engaging in infringing conduct within and directed at or from this District. For example, Defendants have purposefully

availed and voluntarily placed the Empowerride stroller into the stream of commerce with the expectation that these infringing products will be used in this District.

b. On information and belief, Defendants have done and continue to do business in the State of California and with one or more residents of the State of California, including in this District;

c. On information and belief, Defendants direct into the State of California, including in this District, commerce, goods and services, and advertising, including by mail, electronic communications and other means;

d. On information and belief, Defendants have entered into contracts with one or more residents of the State of California to supply products or services within the State of California, including in this District;

e. Defendants have offered and continue to offer, products constituting patent and trademark infringement and services relating to this complaint in the State of California including in this District;

f. On information and belief, Defendants have made substantial sales and shipments of infringing goods within the State of California, including in this District;

g. On information and belief these infringing products have been and continue to be sold and used in this District.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b) at least because Defendants have committed acts of infringement in this District, because Defendants have transacted and continue to transact business within this District, have sold and continue to offer for sale services and products within this district which are a substantial part of the events giving rise to this action. In addition, venue is proper because Wonderfold has suffered and is suffering harm in this District.

## THE PARTIES

8. Wonderfold is a corporation organized and existing under the laws of the State of California with its principal place of business at 5796 Martin Road, Irwindale, California 91706 and is in the business of marketing and selling strollers.

9. Upon information and belief, Peter Anaradian is an individual residing in the state of Nebraska with an address at 18874 Patrick Ave, Elkhorn, NE 68022.

10. Upon information and belief, Empowerride LLC, is a limited liability company organized and existing under the laws of the State of Nebraska with a principal place of business at 18874 Patrick Ave., Elkhorn, NE 68022.

11. Upon information and belief, Wonderfold is in the business of researching, designing, developing, manufacturing, marketing, and selling stroller wagons for importation into the United States, and with sales in the United States, including in this District.

12. Upon information and belief, Defendants directly and or indirectly import, develop, design, manufacture, distribute, market, offer to sell and/or sell infringing products and services in the United States, including in the Central District of California, and otherwise purposefully directs infringing activities to this district in connection with the Empowerride stroller.

13. Upon information and belief, Defendants and defendant Does 1-5, have been and are acting in concert, and are otherwise liable jointly, severally or otherwise for a right to relief related to or arising out of the same transaction, occurrence or series of transactions or occurrences related to the making, using, importing into the United States, offering for sale or selling the Empowerride stroller in this District. In addition, this action involves questions of law and fact that are common to all Defendants.

## HISTORY OF THE STROLLER OF WONDERFOLD

14. Wonderfold is currently and for years has been the leading manufacturer of stroller wagons for children. At least as early as 2019, Wonderfold has designed, manufactured, marketed and sold innovative stroller to customers that would assist in carrying all the essentials for toddlers and young children, have the safety and function to be able to carry toddlers and young children, have the convenience of being collapsible, foldable, and have an appealing and distinctive three dimensional shaped design came to signify the quality and reputation of Wonderfold strollers early in the company's history; and such use has been continuous and exclusive since at least as early as 2019.

15. As a pioneer in the creation and innovation of stroller wagons, Wonderfold launched the W line of stroller wagons intended for children six months and older. Wonderfold stollers are known for their reliability, ease-of-use, and innovative industrial design. Wonderfold's team has integrated the functionality of a foldable stroller with a three-dimensional shaped design that is appealing and enjoyable for children and caregivers.

16. On June 21, 2022, United States Design Patent No. D955,301 titled "Stroller", was duly and legally issued by the United States Patent and Trademark Office. The '301 patent has remained in force since that time and continues to be in force.

17. Wonderfold is the exclusive owner of all right, title, and interested in and to the '301 patent with all substantial rights in and to the '301 patent, including the right to sue for and recover damages for past, present, and future infringement. A true and correct copy of the '301 patent is attached hereto as Exhibit 1.

18. The '301 patent covers an ornamental design for a stroller. Wonderfold has practiced the '301 patent in connection with the

commercialization of the Wonderfold strollers and services, as shown for example in the side-by-side comparison below:

| Figure 1 of ‘301 patent | Wonderfold stroller |
| --- | --- |
|  |  |

19. Wonderfold has invested substantial, time, effort and financial resources in developing and promoting its stroller design and stroller of the ‘301 patent and has spent approximately $13 million in extensive promotion alone and in a variety of media throughout the United States, including, but not limited to, product labeling and packaging, brochures, point of purchase display materials, signage, trade magazine advertisements, trade show displays and, on the web, to distinguish its products and services from those offered by others.

20. The Wonderfold stroller is sold in high-end department stores such as Saks Fifth Avenue, Bloomingdales, and Nordstrom, and where some of which are sold for $1,599.00 and is found in approximately 1,500 retail stores including 100 brick-and-mortar stores such as Macy’s, Dick’s Sporting Goods, and Sam’s Club and approximately 308,000 units of the Wonderfold stroller were sold thus far. Wonderfold is scheduled to launch a stroller, in collaboration with Porsche, with a retail price starting at $1,999.

21. The designs associated with the strollers of Wonderfold have become an asset of substantial value and a symbol of Wonderfold's quality products, services, and goodwill. The designs associated with the stroller of Wonderfold are inherently distinctive and have acquired secondary meaning through Wonderfold's long-term, widespread, and continuous use of its designs associated with the Wonderfold stroller in commerce.

22. Strollers manufactured and sold by Wonderfold are specifically designed to provide a unique stroller, distinctive from other strollers. Consumers, retail providers, and others associate the three-dimensional shaped design of the Wonderfold stroller with Wonderfold, as such stroller designs visually set Wonderfold's products and services apart from those of its competitors.

23. The design of the Wonderfold stroller is well-known and famous. Wonderfold has used the design of the stroller in connection with its advertising and design collaborations with celebrities such as Kim Kardashian and Chrissie Teigen and has enjoyed unsolicited media coverage where celebrities such as Kim Kardashian Khloe Kardashian, Kevin Hart, Chrissie Teigen, and Joe Jonas have been the subject of celebrity news for using the strollers of Wonderfold.

24. The image below is of a Wonderfold stroller designed in collaboration between Wonderfold and Kim Kardashian and bearing the personal logo of Kim Kardashian:

BuzzFeed News SIGN IN ABOUT US GOT A TIP? BUZZFEED.COM

The outing was to celebrate Khloé's daughter True's fourth birthday, with Kim's youngest daughter Chicago, and their brother Rob Kardashian's daughter, Dream, among the family kids who joined the party.


Instagram: @kimkardashian

The two sisters gleefully filmed themselves and each other for their social media pages and appeared to be having a whale of a

ADVERTISEMENT
Ads by Google
Send feedback
Why this ad?
BuzzFeed News Rolling Greens Rolling Greens Event Space Open

Print screen taken from article at Buzzfeednews.com, link at https://www.buzzfeednews.com/article/stephaniesoteriou/kim-khloe-kardashian-disneyland-rides-cutting-line and last accessed on September 10, 2026.

25. See also below image taken from Kylie Jenner's Instagram account of her child in a Wonderfold stroller:




Link at [https://www.instagram.com/p/CoIFMR5JoqE/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D&img_index=5](https://www.instagram.com/p/CoIFMR5JoqE/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D&img_index=5), see fifth photo on post, and last accessed on September 10, 2026. As of September 10, 2026, Kylie Jenner had 381 million followers.

26. See also Instagram post of Chrissy Teigen in her Wonderfold stroller:




https://www.instagram.com/p/Cw8byO4ybdJ/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D&img_index=1, last accessed on September 10, 2026. As of September 10, 2026, Chrissy Teigen had 39.3 million followers.

27. Without solicitation, Consumers have dedicated a multitude of internet platforms for the sole discussion of Wonderfold strollers. For example, without the solicitation of Wonderfold:

a. a mom on Facebook created a group “for people to discuss Wonderfold wagons”, at link:

https://www.facebook.com/groups/456820231549640/permalink/1460755311156122/, last accessed on September 10, 2026;

b. a group was created on Instagram and is described as "Just two Mamas obsessed with all things Wonderfold!" and use the below Wonderfold stroller design icon as their profile photo:



at link: https://www.instagram.com/wonderfoldmamas/, last accessed on September 10, 2026; and

c. a Facebook group was, which includes the word "Wonderfold" in their profile wasw created to advertise accessories they make for the Wonderfold stroller, at link: https://www.facebook.com/groups/811445196547009/permalink/970360117322182/?mibextid=oFDknk&rdid=6KEr3Q1tuV4npaal, last accessed on September 10, 2026.

30. A stroller, designed in the shape of a 3D rectangle with panels that raise above the front and back ends of the 3D rectangular shape, side-by-side vertical rectangle-shaped designs on the left and right side of the stroller shape separated and outlined by a thin solid upright rectangle design, two translucent side-by-side panels on the two vertical rectangle-shapes on the left and right side of the stroller, distinctive high-raised sidewalls, distinctive silhouette with and without canopy, distinctive canopy, two seats for children appear to float inside the stroller, stroller seats where the seat backs protrude above the rectangle

shape and where the seat bottoms are raised above the lower portion of the 3D rectangle shape, a flap with a vertical rectangular shape with rounded corners on the lower portion of the flap that hangs over the left and right side of the stroller, a design with three panels of vertical rectangles with the outer two vertical rectangles in translucent material and the middle pattern in solid fabric on the lower portion of a removable basket on the back of the stroller, a crescent shaped flap over the front pocket of the stroller, an overhead canopy with distinctive rounded edges, a distinctive three-ridge design on the clips for the child seats for the stroller, a distinctive three-ridge design on the clips for accessories for the stroller, a distinctive shape when the stroller is folded and with the center flap with a distinctive rectangular design positioned to hang over the edge of the uppermost portion of the folded stroller, a distinctive capsule-shape for the padding for the harness for the child seats, two distinctive curves near the insertion point on the folding latch, handlebar button where the outer facing cover for the button is shaped in a distinctive square where the lines of the square curve outward, where the button for the handlebar is on the inside of the handlebar and is rounded and with an indented circle in the center, and where these purely aesthetic, non-functional stroller designs, or a combination thereof are recognized by consumers as the Wonderfold stroller. The first image below showing the child seat for the stroller and the second image below showing the stroller with the child seat installed.





31. The shapes and lines of the protected design of the Wonderfold stroller are purely aesthetic, not functional, and not essential for the purpose of the stroller, to transport children, and do not affect the quality, or, make the stroller of Wonderfold more or less expensive to manufacture or sell. The design of the Wonderfold stroller is not essential to its use or purpose, and there are a multitude of ways in which a child may be transported in a stroller, and which do not require the design of the Wonderfold stroller.

32. Wonderfold emphasizes and stresses the elements of the design of the stroller. Below are drawings created by Wonderfold for the marketing of the Wonderfold stroller that emphasize the elements of the stroller of Wonderfold:









33. Wonderfold uses the following drawings adjacent to photos of the stroller of Wonderfold in its advertising, as shown below on the main page of its webpage; the drawing circled below in red:




.

See enlarged drawing below:



.

Screenshots taken from website at https://wonderfold.com/ and last accessed on September 10, 2026.

34. Below is a screenshot of how retailers use the drawings of Wonderfold the emphasize the elements of the trademark design of the stroller of Wonderfold:




See enlarged drawings below:



Screenshot taken from [https://www.amazon.com/WONDERFOLD-Multi-Function-Passenger-Adjustable-Reclining/dp/B09KZFDCS8/ref=sr_1_2?crid=2IT0M55Q13OI3&dib=eyJ2IjoiMSJ9.f2sULB0iC45dyrmrhqpDhYyY09TZKPyYjDI6hbaTJh3BD3Y3JrO09A4X8DaKwGOKVcyL7uAj_rRCdmrWrUEzJm8I40PiQG7ekhoV9zWbLlYRJOH_uR6qHl](https://www.amazon.com/WONDERFOLD-Multi-Function-Passenger-Adjustable-Reclining/dp/B09KZFDCS8/ref=sr_1_2?crid=2IT0M55Q13OI3&dib=eyJ2IjoiMSJ9.f2sULB0iC45dyrmrhqpDhYyY09TZKPyYjDI6hbaTJh3BD3Y3JrO09A4X8DaKwGOKVcyL7uAj_rRCdmrWrUEzJm8I40PiQG7ekhoV9zWbLlYRJOH_uR6qHl)

RE_U9YY9zLJNIyVMttTI51ah2OibVRNqZNIGWmcK_zSTh5Y5CjKc4FkKuEaIlxYo5V8PzpCmhv5ncFwAJyYyjZz5oJ2_pher2SHDfpq6tE55SeDIH6QL8.cEXGvsZc6BDh3bqpjffYBMMPGLgYXk8jW6J1rUqaBM0&dib_tag=se&keywords=wonderwagon&qid=1713557452&sprefix=wonderwagon%2Caps%2C132&sr=8-2 last accessed on September 10, 2026.

35. Third parties besides Defendants have also copied the design of the Wonderfold stroller, see below advertisement of yet another copycat stroller:

36.




See link at: https://www.shopabunda.com/products/joymor-quad-deluxe-stroller-wagon-for-4-kids-4-seater-wagon-stroller-features-rubber-wheel-

double-side-handles-adjustable-removable-uv-protection-canopy-gray-quad-deluxe. Link last accessed on 9.10.2026.

37. Since at least as early as 2019, Wonderfold has provided discounts for their Wonderfold stroller wagons for consumers to use with their children with special needs, and consumers with children with special needs have purchased th Wonderfold strollers for the mobility needs of those children.

38. As a result of result of the substantial advertising and promotional efforts of Wonderfold, as well as the high quality of the products and services associated with the stroller design of the '301 patent and Wonderfold's line of strollers, such distinctive stroller design has earned valuable and residual goodwill and reputation for Wonderfold being the sole source for such goods and services in the United States.

## ACTS GIVING RISE TO THE ACTION

39. In recognition of the commercial success of the stroller of the '301 patent, and the inherently distinctive design of the Wonderfold line of strollers, in 2026, Defendants began marketing and selling a foldable stroller in direct competition with Wonderfold, which copies exactly all of the patented and distinctive designs of the stroller of Wonderfold, and which Defendants identify as the Empowerride or Empowerride Navigator stroller and advertised as a stroller wagon for children, as shown below:






Screenshots of Defendants advertising on their webpage, https://empowerridemobility.com/navigator-features/ and https://empowerridemobility.com/patients_and_families/, taken on September 10, 2026.

40. Defendants sell the Empowerride Navigator stroller in efforts to trade off the goodwill of the Wonderfold wagon stroller and use the trademark design of the Wonderfold wagon stroller to draw Wonderfold customers to the Empowerride stroller, see side by side comparison of the Wonderfold and the Empowerride:

| Wonderfold stroller | Empowerride stroller |
|---|---|
|  |  |
|  |  |

41. Defendants copied the stroller design from the stroller design of the '301 patent and the distinctive design of Wonderfold's line of strollers.

42. The stroller design of Defendant's stroller is the same or substantially the same as the stroller design of the '301 patent and Wonderfold's line of strollers. The stroller designs are so similar as to be nearly identical such that an ordinary observer, giving such attention as a purchaser usually gives, would be so deceived by the substantial similarity between the designs so as to be induced to

purchase Defendants' products believing them to be substantially the same as the '301 patent.

43. In spite of the rights of Wonderfold, Defendants willfuly and knowingly infringed Wonderfold's rights, including as to the '301 patent.

44. Defendants copied the stroller design of the '301 patent. A side-by-side comparison of the '301 patented design and exemplary specimens of the Empowerride stroller are shown below, the photograph of the Empowerride stroller being taken from the website of Defendants advertising and offering for sale the Empowerride:

| Figure 1 of '301 Patent | Empowerride stroller |
|---|---|
|  |  |

| Figure 2 of '301 Patent | Empowerride stroller |
|---|---|
|  |  |
| Figure 3 of '301 Patent | Empowerride stroller |
|  |   |
| Figure 4 of '301 Patent | Empowerride stroller |
|  |  |

55. As shown in the photos, the Empowerride stroller has a design that is the same or substantially the same Wonderfold stroller. The stroller designs are so similar as to be nearly identical such that an ordinary observer, giving such attention as a purchase usually gives, would be so deceived by the substantial similarity between the designs so as to be induced to purchase Wonderfold's products believing them to be substantially the same as the stroller design protected by the '301 patent.

56. Wonderfold has not granted any license or authorization to Defendants to make, use, offer for sale, sell, or import strollers that embody the stroller design patented in the '301 patent and which is proprietary to Wonderfold.

57. In spite of the rights of Wonderfold, Defendants willfully and knowingly infringed the rights of Wonderfold, including as to the '301 patent and trade dress of the stroller of Wonderfold. Further, Defendants committed wrongful acts that constitute unfair and deceptive trade practices in relation to the Empowerride stroller and the stroller design and services related to the Empowerride stroller.

58. Wonderfold has been damaged by the foregoing infringing and wrongful acts of Defendants, including, but without limitation, suffering actual damages.

59. By manufacturing and selling the Empowerride Navigator strollers with a stroller design that is the same as, or substantially similar to, Wonderfold's unique and distinctive stroller design protected by the '301 patent, Empowerride willfully and knowingly caused a likelihood of confusion or misunderstanding as to, *inter alia*, the sponsorship and approval of the Empowerride Navigator products and services being offered and sold by Defendants. Such wrongful conduct also caused a likelihood of confusion or misunderstanding as to the

affiliation, connection, or association of the Empowerride Navigator products and services with Wonderfold.

60. Defendants encouraged consumers to believe that the Defendants' products and services were sponsored, approved or sold in affiliation, connection or association with Wonderfold despite knowing of Wonderfold's rights. Defendants' wrongful actions and practices in connection with the Empowerride products and services were deceptive to consumers and others including Wonderfold.

61. Defendants' wrongful conduct and activities will continue unless enjoined by this Court.

**COUNT 1: INFRINGEMENT OF U.S. PATENT NO. D955,301**

65. Wonderfold incorporates by reference and re-alleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

66. Defendants have engaged in a pattern of conduct demonstrating: the objectively high likelihood that Defendants' actions constitute infringement of the '301 patent and that the '301 patent is valid and enforceable; and that this objectively-defined risk was so obvious that Defendants knew or should have known it.

67. Defendants have infringed and continues to infringe the '301 patent by, *inter alia*, making, using, offering to sell, or selling in the United States, including in the State of California and within this District, products infringing the ornamental design covered by the '301 patent in violation of 35 U.S.C. § 271, including, but not limited to Defendants' Empowerride Navigator products.

68. Defendants infringe the '301 patent because, *inter alia*, in the eye of an ordinary observer, giving such attention as a purchaser gives, the stroller design of the '301 patent and the stroller design of the strollers of Defendants are

substantially similar, the resemblance being such as to deceive such an ordinary observer, inducing him to purchase one supposing it to be the other.

69. Defendants copied the stroller design of the '301 patent. A side-by-side comparison of the '301 patented design and exemplary specimens of the Empowerride stroller are shown below, the photograph of the Empowerride stroller being taken from the website of Defendants advertising and offering for sale the Empowerride:

| Figure 1 of '301 Patent | Empowerride stroller |
|---|---|
|  |  |
| Figure 2 of '301 Patent | Empowerride stroller |
|  |  |

| Figure 3 of '301 Patent | Empowerride stroller |
|---|---|
|  |  |
| Figure 4 of '301 Patent | Empowerride stroller |
|  |  |

70. Defendants' acts relating to the '301 patent were undertaken without authority, permission, or license from Wonderfold and such acts violate are in violation of 35 U.S.C. § 271.

71. Defendants' infringement has damaged and continues to damage and injure Wonderfold. The injury to Wonderfold is irreparable and will continue unless and until Defendants are enjoined from further infringement.

72. Wonderfold is entitled to a complete accounting of all revenue and profits derived by Defendants from the unlawful conduct alleged herein, including without limitation, Defendants' total profit pursuant to 35 U.S.C. § 289.

73. Defendants have engaged and are in willful and deliberate infringement of the ‘301 patent. Such willful and deliberate infringement justifies an increase of three times the damages to be assessed pursuant to 35 U.S.C. 35 U.S.C. § 284 and further qualifies this action as an exceptional case supporting an award of attorney’s fees pursuant to 35 U.S.C. § 285.

74. Wonderfold is entitled to damages and a permanent injunction preventing Defendants from further infringement of the ‘301 patent.

**COUNT 2: INFRINGEMENT OF TRADE DRESS/UNFAIR COMPETITION – LANHAM ACT**

75. Wonderfold incorporates by reference and re-alleges all the foregoing paragraphs of this Complaint as if fully set forth herein. Wonderfold’s strollers have acquired distinction and secondary meaning in the marketplace that is not functional.

76. Wonderfold’s promotion of its strollers have resulted in Wonderfold acquiring significant goodwill and legally protected rights in the Wonderfold stroller’s trade dress.

77. As described above, Defendants, manufacture, market, and/or sell strollers that are substantially or confusingly similar to the Wonderfold strollers, incorporating the Two side-by-side vertical rectangle-shaped designs on the left and right side of the stroller separated by a thin solid upright rectangle design, see through paneling on the vertical rectangle-shaped designs on the left and right side of the stroller, a flap with a vertical rectangular shape with rounded corners on the lower portion of the flap that hangs over the side of the stroller, a design with three panels of vertical rectangles with the outer two vertical rectangles in see through material and the middle pattern in solid fabric on the lower portion of a removable basket on the back of the stroller, a crescent shaped flap over the front pocket of the stroller, an overhead canopy with distinctive

rounded edges, a distinctive three-ridge design on the clips for accessories, a distinctive shape when the stroller is folded and with the center flap with a distinctive rectangular design positioned to hang over the edge of the uppermost portion of the stroller, and, two distinctive curves near the insertion point on the folding latch, handlebar button where the outer facing cover over the button is shaped in a distinctive square where the lines of the square curve outward and the button is on the inside of the handlebar.

78. Pursuant to 15 U.S.C. § 1125(a), a non-registered trademark owner may be granted injunctive relief to prevent or restrain infringement of its well-known mark and may also seek an award of damages, disgorgement of profits, and attorney's fees as a result of trademark infringement.

79. Defendants' actions, including their use in commerce of marks and trade dress that are substantially similar or identical to Wonderfold's mark and trade dress, has caused or is likely to cause confusion, mistake, deception of consumers, or misunderstanding as to the source, origin, approval or sponsorship of Defendants' goods.

80. Defendants' actions, therefore, constitute trade dress and unfair competition in violation of the Lanham Act, § 1125(a).

81. Defendants knew of Wonderfold's trade dress prior to marketing and selling the infringing Empowerride Navigator stroller. Accordingly, Defendants' conduct is intentional and willful.

82. Defendants continue to use confusingly similar marks and trade dress in commerce. Upon information and belief, Defendants are willfully offering for sale and selling products that infringe upon Wonderfold's mark and trade dress in order to benefit from Wonderfold's goodwill and reputation, and to falsely create an association between Defendants' and Wonderfold's products.

83. Wonderfold has been and will continue to be irreparably harmed and injured by Defendants' actions, and Wonderfold lack an adequate remedy at law. Defendants therefore should be enjoined from using Wonderfold's mark and trade dress.

84. Wonderfold is also entitled to recover Defendants' profits in providing its goods using Wonderfold's mark and trade dress, as well as all other damages sustained by Wonderfold due to Defendants' use of goods using marks and trade dress identical or confusingly similar to Wonderfold's mark and trade dress, and costs of suit.

85. Because this is an exceptional case, involving willful misconduct by Defendants, Wonderfold is entitled to recover treble damages or Defendants' profits, whichever is greater, and reasonable attorney's fees.

**COUNT 3: UNFAIR COMPETITION – Cal. Bus. & Prof. Code § 17200, et seq.**

86. Wonderfold repeats and realleges the foregoing allegations as if set forth in full herein.

87. As described herein, the actions of Defendants constitute unlawful business practices under California Business & Professions Code 17200, et seq.

88. Wonderfold has a valid and legally protectible right in the Wonderfold stroller, whose trade dress is inherently distinctive and through Wonderfold's continuous use and efforts has become associated with Wonderfold.

89. The above-described acts further constitute business acts that violate 15 U.S.C. § 1125(a) and 35 U.S.C. § 271, and are therefore unlawful.

90. Furthermore, the above-described acts and practices by Defendants have and are likely to continue to confuse, mislead or deceive the general public

and therefore constitute unfair and fraudulent business practices in violation of California Business & Professions Code §§ 17200, et seq.

91. As a direct and proximate result of Defendants' wrongful conduct, Wonderfold has suffered actual injury and has lost money and profits, as well as suffered injury to its reputation and goodwill.

92. Such harm will continue unless Defendants' acts are enjoined by the Court. Wonderfold has no adequate remedy at law. Defendants, therefore, should be enjoined from continuing the practices described above.

## COUNT 4: COMMON LAW UNFAIR COMPETITION

93. Wonderfold repeats and realleges the foregoing allegations as if set forth in full herein.

94. Wonderfold's mark, trade dress and the patented design of products associated therewith have been highly successful and Wonderfold has developed a substantial reputation and goodwill in the marketplace.

95. Upon information and belief, Defendants have misappropriated Wonderfold's efforts and have exploited Wonderfold's mark, trade dress, and the patented design of products associated therewith, as well as Wonderfold's goodwill and reputation.

96. The above-described actions constitute unfair competition.

97. As a direct and proximate result of Defendants' wrongful conduct, Wonderfold has and will continue to be damaged.

98. Such harm will continue unless Defendants' acts are enjoined by the Court. Wonderfold has no adequate remedy at law. Defendants, therefore, should be enjoined from continuing the practices described above.

99. Upon information and belief, Defendants have acted willfully, intentionally and maliciously, such that Wonderfold is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Wonderfold respectfully requests:

A. That judgment be entered in favor of Wonderfold on its claim that Defendants have infringed the '301 patent, directly, and indirectly, literally or under the doctrine of equivalents;

B. That judgment be entered in favor of Wonderfold on its claim that Defendants have committed trade dress infringement and unfair competition under the Lanham Act.

C. That judgment be entered in favor of Wonderfold on its claim that Defendants have committed unfair competition or business practices under California Business & Professions Act § 17200, et seq.

D. That judgment be entered in favor of Wonderfold on its claim that Defendants have committed common law unfair competition.

E. Entering judgment that Defendants account for and pay to Wonderfold all damages to and costs incurred because of Defendants' infringing activities and other conduct complained of herein.

F. That, in accordance with 35 U.S.C. § 283, Defendants and all affiliates, employees, agents, officers, directors, attorneys, successors and assigns, and all those acting on behalf of or in active concert or participation with any of them, be preliminarily and permanently enjoined from:

1. making, importing, using, selling, and offering to sell infringing products practicing the '301 patent and from otherwise infringing, contributing to infringement, and actively inducing infringement of the '301 patent;

2. making, importing, using, selling, and offering to sell products infringing upon Wonderfold's mark or trade dress, or otherwise unfairly

competing with Wonderfold, or, in the alternative, awarding Wonderfold post-judgment royalties for future infringement or unfair competition.

3. holding out in any manner whatsoever that Defendants or Defendants' products or services such as the Empowerride Navigator strollers, are in any way sponsored, approved, sourced, certified, affiliated, connected, or associated with Wonderfold, or Wonderfold's products and services; and

4. making, importing, using, selling, and offering to sell the Empowerride Navigator stroller.

G. A judgment and order that Defendants deliver to Wonderfold for destruction all Empowerride Navigator strollers, molds, sales literature, customer literature, and other trade pieces used in the infringement of the '301 patent, and/or the Wonderfold mark and/or trade dress;

H. A judgment and order that Defendants make an accounting to Wonderfold and pay over to Wonderfold:

1. the extent of Defendants' total profit and revenue realized and derived from its infringement of the '301 patent, and/or Wonderfold's mark and/or trade dress, and actual damage to Wonderfold in an amount not less than a reasonable royalty for Defendants' infringement;

I. An award of damages sufficient to compensate Wonderfold for Defendants' infringement under 35 U.S.C. § 284, and the Lanham Act;

J. Awarding Wonderfold actual damages, in an amount to be proven at trial, and in no event less than a reasonable royalty.

K. Awarding treble damages, as allowed by law.

L. Awarding punitive damages, as allowed by law.

M. That the case be found exceptional under 35 U.S.C. § 285 and that Wonderfold be awarded its attorney's fees;

N. Costs and expenses in this action;

O. An award of prejudgment and post-judgment interest; and

P. Such other and further relief as the Court may deem just and proper.

DATED: September 24, 2026 LAW OFFICES OF NIRIA M. ARVIZU

By / Niria M. Arvizu /
Niria M. Arvizu
Attorney for Plaintiff,
WONDERFOLD CORPORATION

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Wonderfold respectfully demands a trial by jury on all issues triable by jury.

DATED: September 24, 2026 LAW OFFICES OF NIRIA M. ARVIZU

By / Niria M. Arvizu /
Niria M. Arvizu
Attorney for Plaintiff,
WONDERFOLD CORPORATION